ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

20□□ SEP 14  PM 3: 30

CLERK _____
SO. DIST. OF GA.

## IN THE UNITED STATES DISTRICT COURT

### FOR THE SOUTHERN DISTRICT OF GEORGIA

### DUBLIN DIVISION

| | |
|---|---|
| ANDRE' BROWN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CV 303-015 |
| | ) |
| THOMAS AMMONS, Warden,[1] | ) |
| | ) |
| Respondent. | ) |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner brought the captioned case pursuant to 28 U.S.C. § 2254.  For the reasons below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

### I. BACKGROUND

On February 25, 1998, following a jury trial in the Superior Court of Dodge County, Georgia, Petitioner was convicted of one count of armed robbery and three counts of kidnaping and sentenced to four concurrent sentences of 15 years of imprisonment.  Resp't Ex. 6, pp. 83-85.  Petitioner appealed, challenging only the sufficiency of the evidence; the Georgia Court of Appeals affirmed his convictions.  Id. at 73-75 (Brown v. State, No. A98A2003 (Ga. App. Oct. 19, 1998) (unpublished)).

Petitioner then filed a state petition for a writ of habeas corpus in the Superior Court

---

[1] The Court takes judicial notice that Mr. Thomas Ammons is the current Warden of Lee State Prison. The Clerk is **DIRECTED** to substitute Mr. Ammons as the proper party respondent in the case.

of Mitchell County. Resp't Ex. 1. Petitioner argued: (1) trial counsel was ineffective for failing to object "when [Petitioner's] character was erroneously placed into evidence" or "to cross-examine" a witness who "recant[ed]" his statement; (2) the evidence was insufficient to support his convictions; (3) the trial court erred by not instructing the jury regarding "identity" or "voice identification;" and (4) Petitioner was arrested without probable cause. See id. at 3-5.

Following an evidentiary hearing, the state habeas court denied the petition, reasoning: (1) Mr. Mark Straughan, who represented Petitioner at trial and on appeal, was not ineffective; (2) the claim rejected on the merits by the Georgia Court of Appeals (regarding the sufficiency of the evidence) would not be considered; and (3) any claim not brought on direct appeal was procedurally defaulted under O.C.G.A. § 9-14-48(d). See Resp't Ex. 2. At least in part because he did not receive notification of the state habeas court's order denying him relief, Petitioner failed to timely file an application for a certificate of probable cause to appeal ("ACPC") to the Georgia Supreme Court. See Resp't Br. I, pp. 2-4 (doc. no. 7). The Georgia Supreme Court dismissed the ACPC as untimely and also denied Petitioner's motion for reconsideration. See Resp't Exs. 4 & 5.

Petitioner then timely filed[2] the instant federal petition for a writ of habeas corpus. Petitioner now argues: (1) trial counsel was ineffective for failing to object when Petitioner's "character was erroneously placed into evidence" or to cross-examine a witness who recanted his "statement;" (2) the evidence was insufficient to support Petitioner's convictions; (3) the

---

[2]Originally, the captioned matter was dismissed as untimely. (See Order of August 27, 2003.) On appeal, Respondent conceded the timeliness of the federal petition, and the Eleventh Circuit remanded the case to this Court. See Brown v. Upton, No. 03-14561 (11th Cir. Feb. 7, 2005).

2

trial court failed to charge the jury on "identity" or "voice identification;" and, (4) Petitioner

was arrested without probable cause. See Pet.; see also Pet'r's Mem. in Supp. of Pet; Pet'r's

Br. I (doc. no. 7); & Pet'r's Br. II (doc. no. 29).[3]  In response, Respondent asserts that

Petitioner's claims either lack merit or are procedurally barred.

Before turning to the merits of the instant petition, the Court will explain the

applicable standard of review.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), signed into

law on April 24, 1996, amended § 2254(d) to provide:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[3]The Court notes that it has not provided an exhaustive list of the arguments raised in Petitioner's petition, supporting memorandum, and *two* briefs of law--which together total 88 pages in length.  Rather, the Court has provided an accurate *summary* of Petitioner's claims.  The Court is aware of its obligation to consider all of Petitioner's claims under Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992) (*en banc*).  Nevertheless, the Court has no duty to address each of Petitioner's dubious arguments in explicit detail--it suffices to say that any arguments not explicitly declaimed or discussed herein have been considered and found to be devoid of merit.  See, e.g., United States v. Northside Realty Assoc., Inc., 474 F.2d 1164, 1170 n.5 (5th Cir. 1972) ("Courts need not indulge in exegetics, or parse or declaim every fact and each nuance or hypothesis . . . failure to mention each and every specific item . . . in no way indicates that they were not considered.") (citations omitted); see also White v. United States, No. 05-14470, 2006 WL 887743, at *2 (11th Cir. Apr. 6, 2006) (quoting Broadwater v. United States, 292 F.3d 1302, 1303 (11th Cir. 2002)) (Clisby does not forbid summary denial of meritless claims.); Miller v. United States, No. 04-13332, 131 Fed. Appx. 161, 163 (11th Cir. Apr. 29, 2005) (Clisby does not require district court "to comment on all of the evidence presented in support of [a petitioner's] claim.").

The United States Supreme Court addressed Section 2254(d) in <u>Williams v. Taylor</u>, 529 U.S. 362, 404 (2000).  The Court explained:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

<u>Id.</u> at 404-05 (emphasis added).

The Eleventh Circuit has explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case.
>
> A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case.  An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context.  Notably, an "unreasonable application" is an "objectively unreasonable" application.

<u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2001) (internal citations omitted).  In sum, a habeas petition may be granted if "the state court's decision was contrary to, or involved an objectively unreasonable application of, the governing Federal law set forth by Supreme Court cases."  <u>McIntyre v. Williams</u>, 216 F.3d 1254, 1257 (11th Cir. 2000).

Moreover, § 2254(e)(1) sets a highly deferential standard of review for state court factual determinations.  "[A] determination of a factual issue made by a State court shall be

presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Fugate v. Head, 261 F.3d 1206, 1215 (11th Cir. 2001) (citations omitted); see also Crawford v. Head, 311 F.3d 1288, 1317 (11th Cir. 2002) (affirming state court factual determination "because there is support for it in the record and [the petitioner] has not rebutted the finding by clear and convincing evidence"). Thus, "some evidence suggesting the possibility" that a petitioner's version of the pertinent facts is correct is not sufficient to carry the burden of showing that a state court made an unreasonable determination of fact as contemplated by § 2254(d)(2). Bottoson v. Moore, 234 F.3d 526, 540 (11th Cir. 2000).

With these basic principles in mind, the Court now turns its attention to the instant petition.

### III.  DISCUSSION

**A.**     **Procedurally Barred Claims**

**1.**     **Exhaustion and Procedural Default Rules Explained**

Respondent argues that many of Petitioner's claims are procedurally barred because they were not properly raised in state court. The AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss habeas claims that the petitioner has a right to raise, by any available procedure, in state court. 28 U.S.C. § 2254(b)(1)(A) & (c). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by *any* available procedure, the question presented." Id. § 2254(c)(emphasis added).  In reference to this requirement, the Supreme Court has held that a state inmate is deemed to have exhausted his state judicial

5

remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the state inmate's federal claims. Castille v. Peoples, 489 U.S. 346, 351 (1989). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

As the Eleventh Circuit has explained, "[a] state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). The exhaustion requirement applies with equal force to all constitutional claims, including claims of ineffective assistance of counsel. Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992)("[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously."). Furthermore, a petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available. McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005)("It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar.").

A federal habeas petitioner can run afoul of procedural default rules in one of two ways. First, a federal habeas petitioner can improperly attempt to revive an old claim that a state court has previously denied on procedural grounds. When a state court denies a

6

constitutional claim on "adequate and independent"[4] state procedural grounds, the district

court is precluded from later reviewing the merits of the claim on collateral attack. Judd, 250

F.3d at 1313.

Likewise, a federal habeas petitioner runs afoul of procedural default rules when he

attempts to bring a new claim that would be procedurally barred if he attempted to raise it

in state court.  In such instances, the petitioner's failure to bring the claim properly in state

court has "matured into a procedural default."  Smith v. Jones, 256 F.3d 1135, 1139 (11th

Cir. 2001).  Thus, where a state procedural bar is apparent, a court "can forego the needless

'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal

habeas relief."  Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998); see also Harris

v. Reed, 489 U.S. 255, 263 n.9 (1989) ("[A] federal habeas court need not require that a

federal claim be presented to a state court if it is clear that the state court would hold the

claim procedurally barred.").  Simply put, if a claim has not been "fairly presented in the

state courts, it is procedurally defaulted."  Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir.

2006).

Of note here, under Georgia law, absent a showing of cause to excuse the default and

---

[4]A state court decision rests upon "adequate and independent" state procedural grounds when it
satisfies the following three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly state that
> it is relying on state procedural rules to resolve the federal claim without reaching the merits
> of that claim.  Secondly, the state court's decision must rest solidly on state law grounds, and
> may not be intertwined with an interpretation of federal law.  Finally, the state rule must be
> adequate, i.e., it must not be applied in an arbitrary or unprecedented fashion.  The state
> court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's
> federal constitutional claim to be considered adequate for the purposes of the procedural
> default doctrine.

Judd, 250 F.3d at 1313 (internal quotes and citations omitted).

actual prejudice, the failure to object at trial or to raise on direct appeal any alleged error creates a procedural bar to its consideration in a habeas corpus proceeding. <u>See</u> O.C.G.A. § 9-14-48(d); <u>Black v. Hardin</u>, 255 Ga. 239, 240, 336 S.E.2d 754, 755 (1985) ("The rule now may be stated as follows: a failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus."). Georgia law also requires that claims of ineffective assistance of trial counsel be raised at the "earliest practicable moment" by new counsel, or absent a showing of cause and prejudice, the claims are procedurally defaulted. <u>White v. Kelso</u>, 261 Ga. 32, 33, 401 S.E.2d 733, 734 (1991); <u>Thompson v. State</u>, 257 Ga. 386, 388, 359 S.E.2d 664, 665 (1987).

Also of note, Georgia law requires state habeas petitioners to raise all available grounds for relief in a first or amended habeas petition. <u>See</u> O.C.G.A. § 9-14-51. Under § 9-14-51, a second or successive Georgia state habeas petition is procedurally barred unless a state habeas judge concludes that the grounds cited in the petition could not have been raised in the original petition. <u>See</u> <u>id.</u> The Eleventh Circuit has held that Georgia's successive petition statute should be enforced by federal courts "unless there is some indication that a state court judge would find the claims in question could not reasonably have been raised in the original or amended petition." <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1327 (11th Cir. 1998).

Of course, the Eleventh Circuit has explained that a procedural default may be excused if certain conditions are met:

> A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default. Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a

8

fundamental miscarriage of justice.

Jones, 436 F.3d at 1304 (internal citations omitted).  Cause entails a showing "that some objective factor external to the defense impeded" efforts to comply with the state procedural rule.  Coleman v. Thompson, 501 U.S. 722, 753 (1991).  A state petitioner may also demonstrate cause to overcome a procedural default by demonstrating that he received constitutionally ineffective assistance of counsel.  Turpin v. Todd, 268 Ga. 820, 826, 493 S.E.2d 900, 906 (1997).  The narrow fundamental miscarriage of justice exception, on the other hand, encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of the crime.  Murray v. Carrier, 477 U.S. 478, 496 (1986).

Having summarized the applicable procedural default rules, the Court now turns to the threshold issues:  (1) whether any of Petitioner's claims have been procedurally defaulted, and (2) if so, whether the default may be excused.

### 2.    Application to the Instant Case

Respondent argues that Petitioner's claims regarding his arrest and the trial court's failure to charge the jury on "identity" are procedurally barred. Resp't's Br. I, p. 10. Relying upon O.C.G.A. § 9-14-48(d) and Black, cited *supra*, the state habeas court concluded that these claims were procedurally defaulted when Petitioner failed to raise them at trial or on direct appeal.  See Resp't's Ex. 2, p. 7. Given that the state habeas court relied upon well-established and regularly-applied state procedural law, this Court must defer to the state court's conclusion absent some cause to excuse Petitioner's default.

Petitioner argues that his default was the product of ineffective assistance of counsel.

9

See Pet'r's Br. I, pp. 7, 16. Of note, in his state habeas petition, Petitioner argued that his counsel was "ineffective" for not raising these issues at trial or on direct appeal. See Resp't Ex. 1, p. 8. Unfortunately, the state habeas court did not address this argument explicitly. See Resp't Ex. 2. Because the Court determines that Petitioner squarely raised this argument in his state habeas petition,[5] the Court will assess the merits of these otherwise defaulted claims along with Petitioner's other ineffective assistance of counsel claims in order to determine whether Petitioner has shown cause to excuse his default.

**B.     Ineffective Assistance of Counsel**

Including the ostensibly defaulted claims discussed above, Petitioner argues that his counsel was ineffective for failing to object to "character" evidence, failing to cross-examine a witness, failing to seek a jury instruction on "identity," and failing to challenge Petitioner's arrest. As the state habeas court correctly noted, claims of ineffective assistance of counsel are evaluated under "the test enunciated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984)." Resp't Ex. 2, p. 8. The facts of Strickland, however, are dissimilar from those presented here. Moreover, it cannot be said that the result reached by the state habeas court was contrary to clearly established federal law.

Thus, the Court will focus its attention on whether the state habeas court unreasonably applied Strickland to the facts of this case. Bell v. Cone, 535 U.S. 685, 699 (2002) ("[I]t is not enough to convince a federal habeas court that, in its independent

---

[5]It perhaps bears noting that an ineffective assistance claim, raised in an effort to show cause for a procedural default, may itself be defaulted. See Edwards v. Carpenter, 529 U.S. 446, 453 (2000) ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.").

judgment, the state-court decision applied <u>Strickland</u> incorrectly. Rather, [the petitioner] must show that the [state court] applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner." <u>Id.</u> (internal citations omitted)). The Court will also use the <u>Strickland</u> standard to assess whether Petitioner has shown cause to excuse the default of his procedurally barred claims.

Under the first prong of the <u>Strickland</u> standard, Petitioner must show that his counsel's performance was deficient in that it fell below an "objective standard of reasonableness" considering all the circumstances at the time of counsel's conduct. <u>Strickland</u>, 466 U.S. at 687-92. Nonetheless, the Court's scrutiny of counsel's performance must be "highly deferential," and the Court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Id.</u> at 689. In this regard, the Court must determine whether counsel's performance was within "the wide range of professionally competent assistance," so as "to make the adversarial testing process work in the particular case." <u>Id.</u> at 690.

In this regard, there is a strong presumption that counsel provided "reasonable professional assistance." <u>Id.</u> at 689. For example, decisions concerning which witnesses to interview, as well as which motions to make, are strategic decisions which are entitled to a "heavy measure of deference." <u>Id.</u> at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion--though the presumption is not insurmountable--is a heavy one." <u>Fugate v. Head</u>, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). Indeed, as the Eleventh Circuit has succinctly stated, "The test has

11

nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). Consequently, "cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

Under the second prong, the Court must determine whether the deficient performance actually prejudiced Petitioner's case. To satisfy the prejudice prong of the test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

As explained below, Petitioner has not shown that the state habeas court unreasonably applied Strickland. As to Petitioner's procedurally defaulted claims, the Court determines that Petitioner has not shown cause to excuse his default because he has not shown that counsel was ineffective.

### 1.    "Character" Evidence

First, the Court assesses Petitioner's claim that his counsel failed to object to inadmissible "character" evidence. Here, Petitioner refers to the admission of his booking photograph--while the photograph was being taken, Petitioner stuck his tongue out. At the state habeas court's evidentiary hearing, Petitioner's counsel explained that he did not object to the photograph's admission because he was not aware of any legal basis for excluding the

12

photograph. See Resp't Ex. 6, pp. 17-18, 262. In addressing this claim, the state habeas court concluded: "This Court knows of no evidentiary basis [for] excluding Petitioner's booking photograph to the jury [sic], and Petitioner's antics in sticking out his tongue were an unfortunate, but self-inflicted, indiscretion." Resp't Ex. 2, pp. 10-11.

Petitioner provides no basis upon which to conclude that the state habeas court's reasoning on this point is contrary to or an unreasonable application of federal law, and the Court itself is aware of none. Cf. United States v. Menichino, 497 F.2d 935, 941 (5th Cir. 1974) (holding that defendant's voluntary statements made during booking were admissible). At any rate, Petitioner does not explain how the admission of the photograph had a material effect upon the outcome of his trial. Simply put, Petitioner's complaint regarding the admission of the photograph lacks merit.

### 2.    Failure to Cross-Examine

Next, the Court assesses Petitioner's claim that counsel acted unreasonably in failing to cross-examine Petitioner's co-defendant, Tony Dupree ("Dupree"). Pet'r's Mem. in Supp., p. 24. During the trial, Dupree recanted testimony incriminating Petitioner and began offering testimony favorable to Petitioner. Resp't Ex. 6, pp. 9-11, 13, 199-202. At the evidentiary hearing, counsel explained that, given Dupree's new testimony, he made a strategic decision not to cross-examine Dupree; the state habeas court determined that this strategic decision was not unreasonable. Resp't Ex. 2, p. 11. Petitioner outlines no reason to suppose otherwise, much less to conclude that the state habeas court unreasonably applied Strickland. Furthermore, Petitioner has identified no prejudice arising from his counsel's decision.

13

### 3.     Failure to Request Charge on "Identity"

Petitioner's argument pertaining to the trial court's failure to issue a jury instruction regarding identity, whether regarded as a claim of ineffective assistance of counsel or a substantive claim of trial error, also fails.   Of course, because the robbery was committed by a masked assailant, identity was a key issue at trial.  Of note, one of the victims (a former co-worker of Petitioner) identified Petitioner as the robber based on his voice, height, and build.  See Resp't Ex. 6, pp. 73-75.  Also of note, Petitioner admits that counsel requested a charge regarding "mistaken identity," but that the trial judge refused the request.  Pet'r's Br. I, p. 29.  Presumably, Petitioner argues that counsel failed to raise the point persuasively, or else that counsel should have argued the point on appeal.

Regardless, assuming *arguendo* that the trial judge's failure to issue a specific charge regarding identity was erroneous, Petitioner has shown no prejudice.   Thus, even if this claim is not procedurally barred, it fails for lack of merit.  Of particular note, the trial judge did instruct the jury that the prosecution bore the burden to prove Petitioner's presence at the scene of the crime beyond all reasonable doubt.  Resp't Ex. 6, pp. 236, 243-44. The trial judge also instructed the jury regarding Petitioner's alibi defense--that he was with his girlfriend at the time of the robbery.  Id.  Given the evidence in the case, especially one of the victim's identification testimony, as well as the trial judge's instructions, it is simply "inconceivable that the attention of the jury was not focused on the issue of [Petitioner's] identification." United States v. Rhodes, 569 F.2d 384, 390 (5th Cir. 1978).  Put plainly, there is no indication that an instruction regarding identity would have had any impact upon the outcome of Petitioner's case.  Given the total lack of any actual prejudice, Petitioner's

14

claim fails, whether viewed as a claim of trial error or an ineffective assistance claim.

### 4.    Failure to Challenge Arrest

Petitioner also contends that he was arrested without probable cause.  To begin, the claim fails because it is conclusory.  Neither Petitioner's petition, supporting memorandum, nor his two briefs provide any reason to suppose that his arrest was illegal, much less that counsel should have argued as much.  In his petition, Petitioner offers only that, "[t]here was no probable cause to arrest [Petitioner] for the charges . . . because any statement he made denied the charges and he only admitted to planning the robbery."  Pet., p. 8.  Simply put, the claim is frivolous and merits no further discussion.

### C.    Sufficiency of the Evidence

Finally, the Court assesses Petitioner's claim that the evidence was insufficient to support his conviction.  Applying Jackson v. Virginia, 443 U.S. 307, 324 (1979), the Georgia Court of Appeals explicitly rejected this claim.  See Resp't Ex. 6, p. 75.  Under Jackson, a conviction may only be reversed if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  443 U.S. at 324.  Here, the Georgia Court of Appeals concluded that a reasonable jury could decide to believe one of the victim's testimony identifying Petitioner as the robber and Dupree's original statement (which incriminated Petitioner), rather than accept the alibi testimony offered by Petitioner and his girlfriend or Dupree's recantation.  Id.

Petitioner fails to explain how this conclusion was an unreasonable application of Jackson.  On direct appeal, the appellate court has a duty to view the evidence in the light most favorable to the verdict.  At bottom, Petitioner complains that the jury incorrectly

15

evaluated the credibility of the witnesses and the reliability of the victim's identification. However, these matters were soundly within the province of the jury, and Petitioner has identified no constitutional error.

In sum, all of Petitioner's claims are either procedurally defaulted or devoid of merit.

## IV. CONCLUSION

Accordingly, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this ____ day of September, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE